NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0296n.06

No. 08-3319

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JOHN WYSONG,                        )

                                       )

      Plaintiff-Appellant,             )         ON APPEAL FROM THE

                                       )         UNITED STATES DISTRICT

      v.                           )         COURT FOR THE SOUTHERN

                                       )         DISTRICT OF OHIO

CITY OF HEATH; SCOTT INGERSOLL, CHIEF OF  )

POLICE; BRUCE RAMAGE, OFFICER; STEVE  )

COULTER, SERGEANT; JAIMEE COULTER,  )

PATROLMAN; MARK PHILLIPS, PATROLMAN,  )

APRIL MARTIN, PATROLMAN,            )

                                       )

      Defendants-Appellees.         )

BEFORE: GIBBONS, ROGERS, and KETHLEDGE, Circuit Judges.

ROGERS, Circuit Judge. John Wysong appeals the district court's grant of summary judgment to defendant police officers Bruce Ramage and Jaimee Coulter. Wysong brought suit against the City of Heath and several city officials, including Ramage and Coulter, after Wysong was charged with disorderly conduct for actions that he claims were involuntary due to a diabetic seizure. The district court granted summary judgment to the defendants on Wysong's state and federal claims of false arrest and malicious prosecution, and Wysong appealed those determinations after the district court issued a final order dismissing the case. Because Wysong's initial arrest was supported by probable cause, because there is no evidence in the record that the police officers supplied the

prosecutor with any false or misleading information, and because the officers are entitled to qualified immunity on all of Wysong's claims that are the subject of this appeal, we affirm.

On July 13, 2002, Officer Ramage was leaving a Kroger store on an unrelated complaint when he was approached by two women who complained that a man in a white truck had been kicking the window of his truck and making lewd gestures and obscene comments to them. That man was John Wysong, and while Ramage was talking to the women, he observed Wysong leave the truck and walk towards the Kroger. After calling in the complaint and requesting backup, Ramage approached Wysong, who appeared to be staggering, and asked to speak with him. Ramage asked Wysong if that was his truck, and Wysong answered, "What truck?" When Ramage pointed to the truck Wysong had just left, Wysong answered, "Whose truck?"

After the exchange, Wysong fled from Ramage towards the road. Ramage chased Wysong, yelled at him to stop, and then yelled, "You're under arrest." After running about 20 to 30 yards, Ramage caught Wysong and forced him to the ground by striking him in the shoulder. As Wysong fell, Officer Jaimee Coulter arrived at the scene in response to Ramage's initial call for backup. With Coulter's assistance, Ramage attempted to get control of Wysong's hands in order to handcuff him. One of the women who had initially reported Wysong claimed that he continued to struggle with the officers, and both Ramage and Coulter claimed that they were kicked by Wysong. Two more officers eventually arrived and the officers were able to handcuff Wysong, but he continued to struggle as the officers led him to a police car.

Wysong claims that he has no memory from the time he pulled into the Kroger parking lot until he was inside the police car. Once in the car, Wysong began to calm down and he informed one of the officers that he was a diabetic. The officers then contacted emergency medical personnel and instructed paramedics to meet the officers and Wysong at the police station, which was less than a mile away from the Kroger. Coulter stated in her deposition that Wysong was at times cooperative and that Wysong said in the police car that he was not going to cause any more problems, but at the station he again became uncooperative. The paramedics treated Wysong with oral glucose and indicated that he should be taken to the hospital. Ramage accompanied Wysong to the hospital and released him on a personal recognizance bond.

Later that day, Ramage prepared an incident report stating that Wysong had been charged with disorderly conduct, obstructing official business, and resisting arrest. The report stated that Wysong first indicated that he was diabetic after he was handcuffed and placed in the police car, and the report also stated that paramedics at the station had advised police that Wysong's blood sugar was low. Ramage indicated that he accompanied Wysong to the hospital, where he was released.

Officer Coulter prepared a supplemental statement. Her version of events was consistent with Ramage's, but she also wrote that the officers were only able to handcuff Wysong after threatening to use mace. She stated that one of the late-arriving officers grabbed Coulter's mace can, put it directly in front of Wysong's face, and told Wysong he would be maced if he did not comply. Coulter stated that Wysong immediately complied after the threat. She also reported that the paramedics stated that Wysong's blood sugar level was 48 and "that [Wysong's behavior] seemed

consistent with that of a diabetic with low [blood] sugar, but they too were confused as to how Mr. Wysong had become rather lucid prior to being treated." Coulter picked up Ramage from the hospital, where she heard Wysong ask Ramage several times if the charges would be dismissed and Ramage respond that the determination would be made by a prosecutor.

At the time of Wysong's arrest, City of Heath Prosecutor Harvey Shapiro was on vacation in Florida. Shapiro could not recall whether he received a call concerning Wysong's case that day, but he assumed based on custom that he would have received a call telling him that he would receive an email or fax regarding the case, and he did recall speaking with somebody from his office about the case before he left Florida. Shapiro also recalled receiving the police reports and the witness statements, but he stated that he could not initially recall whether the information he had received included a report from the emergency room doctor or the paramedics who treated Wysong. Later in his deposition Shapiro stated that he must have seen the paramedics' report at some point because he thought he remembered details about a paramedic's being surprised that Wysong was able to recall parts of the situation. Shapiro testified that at some point prior to leaving Florida he authorized an associate from his office to prepare a complaint against Wysong. Although he could not remember doing so, Shapiro knows that he authorized the charge because it was eventually filed and only he could determine whether a charge would be filed. Shapiro decided not to file a charge for obstructing official business or resisting arrest, although Ramage's report charged Wysong with those offenses. While Shapiro was considering charges against Wysong, Shapiro never spoke to any City of Heath police officer about the case. After filing charges, Shapiro decided to dismiss the

charge after determining that the interests of the City of Heath and the interests of justice would not be served by continued prosecution.

Wysong then brought suit against the City of Heath and several city employees, including Ramage and Coulter. Wysong alleged a § 1983 claim for arrest and prosecution without probable cause and use of excessive force in violation of the Fourth Amendment; deliberate indifference to serious medical needs in violation of the Fourteenth Amendment; a state law claim for false arrest; a state law claim for malicious prosecution against Officer Ramage, and municipal liability against the City of Heath. The parties filed cross-motions for summary judgment, and the court denied Wysong's motion while granting the defendants' motion in part and denying in part. The district court granted summary judgment for the defendants on the false arrest and malicious prosecution claims under state and federal law, and that decision is now the subject of this appeal. The parties continued to litigate the remaining claims in the case involving excessive force until this court determined on interlocutory appeal that the defendants were entitled to qualified immunity on those claims. *Wysong v. City of Heath*, 260 Fed. App'x 848 (6th Cir. 2008). In response to this court's order, the district court issued an order closing the case. Wysong then timely appealed the final order, challenging the district court's initial partial grant of summary judgment to the defendants on Wysong's false arrest and malicious prosecution claims under federal and state law.

Ramage and Coulter were entitled to summary judgment on Wysong's constitutional claim of false arrest because there existed a probability of criminal activity when Ramage arrested Wysong and because the officers are entitled to qualified immunity. Wysong concedes that his initial arrest

was lawful and this initial detention provided the probable cause for Wysong's arrest. "For Fourth Amendment purposes: 'Probable cause necessary to justify an arrest is defined as whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Wilson v. Morgan*, 477 F.3d 326, 333 (6th Cir. 2007) (quoting *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 302 (6th Cir. 2005)) (alteration in original). Wysong does not dispute the following facts: two witnesses reported that Wysong had kicked the window of his car and made lewd and obscene gestures to them; when they reported this activity to Ramage and Ramage attempted to speak with Wysong, he fled despite Ramage's ordering Wysong to stop and telling him he was under arrest; and after Ramage knocked Wysong over, he continued to struggle with Ramage and other officers until the officers were able to place Wysong in handcuffs. "Whether there exists a probability of criminal activity is assessed under a reasonableness standard based on an examination of facts and circumstances *within an officer's knowledge at the time of an arrest*." *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003) (emphasis in original) (internal quotation marks removed). These actions support only one conclusion—that the circumstances showed that at the time of Wysong's arrest, the officers reasonably believed based on the facts and circumstances that Wysong was engaged in criminal activity.

That the officers later learned that Wysong was a diabetic suffering from low blood sugar does not negate the earlier finding of probable cause. Wysong argues that his appeal concerns

actions taken by the police only after they learned that he was a diabetic suffering from low blood sugar, but we have already rejected the argument that "[w]hen subsequent developments disprove the correctness of a previous police determination that probable cause exists, . . . the police no longer have justification under the Fourth Amendment to continue the incarceration, and must release the suspect." *Peet v. City of Detroit*, 502 F.3d 557, 565 (6th Cir. 2007); *see also Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007) ("The fact that an officer later discovers additional evidence unknown to her at the time of the arrest, even if it tends to negate probable cause, is irrelevant—we only care about what the officer knew at the time the decision was made."). We stated in *Peet* stated that policy does not support a requirement that investigators "reevaluate probable cause constantly with every additional witness interview and scrap of evidence collected." 502 F.3d at 565. Because there is no genuine issue of material fact as to whether the officers had probable cause to arrest Wysong at the time of his arrest, the officers are entitled to summary judgment on Wysong's constitutional claim of false arrest.

The officers are also entitled to summary judgment with respect to Wysong's constitutional claim of malicious prosecution because Shapiro made the decision to prosecute Wysong and there is no evidence in the record that the officers misled Shapiro in any way. The Sixth Circuit recognizes a constitutional claim for malicious prosecution in violation of the Fourth Amendment, *Thacker*, 328 F.3d at 258-59, but we have not resolved the elements of a malicious prosecution claim based upon the Fourth Amendment. *Id.; see also Briner v. City of Ontario*, No. 08-3731, 2010 WL 1141152, at *18 (6th Cir. Mar. 26, 2010). However, '[t]his court has held that a police officer cannot

be liable for Fourth Amendment malicious prosecution when he did not make the decision to bring charges, as long as the information he submitted to the prosecutor is truthful." *Kinkus v. Village of Yorkville, Ohio*, 289 Fed. App'x 86, 91 (6th Cir. 2008). We held in *Kinkus* that an Ohio police officer who completed a police report and signed a criminal complaint form could not be held liable because those documents were ultimately forwarded to the prosecutor who made the decision to prosecute. *Id.* The court in *Kinkus* based its decision on *Skousen v. Brighton High School*, 305 F.3d 520, 529 (6th Cir. 2002), which held that when a police officer does no more than provide truthful information to the prosecutor's office, that officer cannot be held liable for malicious prosecution. Here, there is no evidence that Ramage or the other officers did anything to cause Wysong to be prosecuted other than provide the prosecutor with truthful information. Wysong points to the police report prepared by Ramage, the criminal complaint filed by another patrolman in the Heath Police Department, the Heath Intake Form for Misdemeanor Charges, and a response to an interrogatory stating that Ramage participated in the decision to bring charges against Wysong, but none of these documents challenge the fact that only Shapiro could make the decision to prosecute Wysong. Therefore, the officers are entitled to summary judgment with respect to Wysong's constitutional claim of malicious prosecution.

Wysong argues that the officers should be liable because Shapiro based his decision to prosecute upon false and misleading representations provided by the officers, but there is no evidence to support these allegations. According to Wysong, the officers misled Shapiro both by failing to provide Shapiro with the relevant information about Wysong's diabetic seizure and by

falsely reporting that Wysong was lucid during his arrest.  The record shows, however, that the

reports from Ramage and Coulter informed Shapiro that Wysong's actions may have been the result

of a diabetic seizure.  Both reports clearly stated that Wysong claimed to be a diabetic and that while

still in custody he was treated by paramedics and taken to the emergency room as requested by the

paramedics.  Coulter's report even indicated that the paramedics informed the officers that Wysong's

blood sugar level was 48.  Wysong claims that the officers should have provided the emergency

department report in which Wysong's emergency room doctor stated that Wysong's actions were the

result of a medical condition and should not lead to arrest or criminal charges, but that report was

not transcribed until two days after Ramage and Coulter prepared their reports; Ramage testified at

his deposition that he did not become aware of the emergency department report until after Wysong

filed suit.  Moreover, Wysong cannot raise a genuine issue of material fact as to whether Coulter's

statement that Wysong was responsive to threats of mace was false because, as we noted in

Wysong's previous appeal, Wysong claimed to have no memory of events that occurred during his

arrest.  *Wysong*, 260 F. App'x at 849.

Finally, the officers are entitled to immunity on all of Wysong's state law claims of malicious

prosecution and false arrest.  Ohio Revised Code 2744.03(A)  provides:

> In a civil action brought against a political subdivision or an employee of a political
> subdivision to recover damages for injury . . . caused by any act or omission in
> connection with a governmental or proprietary function, the following defenses or
> immunities may be asserted to establish nonliability:
> (6) . . . the employee is immune from liability unless one of the following applies:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code.

Wysong has not alleged application of the exceptions discussed in subpart (a) or (c), and no facts justify the application of those subparts here. Because the officers had probable cause to arrest Wysong and Wysong has not raised a triable question of fact on his claims that the officers withheld information from or provided false information to Shapiro, Wysong cannot show that any of the officers' actions were wanton or reckless, in bad faith, or taken with malicious purpose. Therefore, the officers are entitled to summary judgment on the basis of state law immunity.

For these reasons, the judgment of the district court is affirmed.